UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANU UPADHYAY,

            Plaintiff,

   - against -

NEERAJ SETHI, RONICA SETHI
SHIKHA SETHI, and GANESH RAJ.

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10 Civ. 8462 (NRB)(FM)

**ECF CASE**

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS

           Kathleen M. McKenna
           Joshua F. Alloy
           PROSKAUER ROSE LLP
           11 Times Square
           New York, New York 10036
           (212) 969-3000

           *Attorneys for Defendants*

## **TABLE OF CONTENTS**

                                                    **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    PLAINTIFF HAS NOT ESTABLISHED A RIGHT TO EQUITABLE TOLLING ............ 1

      A.    An Alleged (And Disputed) Failure To Post Wage/Hour Notices In A Private Home Is Insufficient To Trigger Equitable Tolling. .................................................. 2

      B.    Plaintiff Had Knowledge Of Her Legal Rights And Claims And Failed To Act With Reasonable Diligence To Preserve Them. ........................................................ 4

II.   PLAINTIFF'S FLSA OVERTIME CLAIMS FAIL AS A MATTER OF LAW BECAUSE SHE WAS A LIVE-IN DOMESTIC SERVICE EMPLOYEE ........................ 7

      A.    Plaintiff's Alleged Massage Work Was "Of A Household Nature." ........................ 7

      B.    Plaintiff's Reliance On A Regulation Applicable To Agricultural Workers Is Misplaced. .................................................................................................................. 9

CONCLUSION ................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Astudillo v. U.S. News & World Report*,
   No. 02 Civ. 7902 (WHP), 2004 U.S. Dist. LEXIS 18685 (S.D.N.Y. Sept. 17, 2004).........9, 10

*Mandarino v. Mandarino*,
   No. 04-148 (GWG), 2010 U.S. Dist. LEXIS 30896 (S.D.N.Y. Apr. 1, 2010) ..........................2

*Marshall v. Intraworld Commodities Corp.*,
   No. 79 C 918 (EHN), 1980 WL 2097 (E.D.N.Y. June 9, 1980).........................................9, 10

*Ramirez v. Rifkin*,
   568 F. Supp. 2d 262 (E.D.N.Y. 2008) .....................................................................................3

*Rivera-Gomez v. Castro*,
   900 F.2d 1 (1st Cir. 1990) .......................................................................................................2

*Skipper v. Superior Dairies, Inc.*,
   512 F.2d 409 (5th Cir. 1975) ..................................................................................................9

*Smith-Haynie v. District of Columbia*,
   155 F.3d 575 (D.C. Cir. 1998) ................................................................................................2

*United States v. Sabhnani,*
   566 F. Supp. 2d 139 (E.D.N.Y. 2008) .....................................................................................3

*Watkins v. Milliken & Co.*,
   613 F. Supp. 408 (W.D.N.C. 1984) ........................................................................................2

*Zirintusa v. Whitaker*,
   No. 05-1738 (EGS), 2007 U.S. Dist. LEXIS 29 (D.D.C. Jan. 3, 2007)..................................10

**STATUTES AND OTHER AUHORITIES**

29 C.F.R. § 552.3 ...........................................................................................................................7, 8

29 U.S.C. § 213(b)(21) .......................................................................................................................7

29 C.F.R. § 780.11 .............................................................................................................................9

http://en.wikipedia.org/wiki/Domestic_worker ................................................................................9

This Reply Memorandum of Law is submitted by Defendants in further support of their Partial Motion to Dismiss.[1] The relevant facts are outlined in Defendants' moving papers and affidavits, including the Reply Affidavit submitted by Dr. Shikha Sethi.

## I. PLAINTIFF HAS NOT ESTABLISHED A RIGHT TO EQUITABLE TOLLING

Despite having been aware of her legal rights and potential claims for many years, and despite having failed to act with any degree of diligence to preserve her rights, Plaintiff nevertheless insists that she is entitled to litigate 13 years of long-dormant and time-barred claims based on the exceedingly narrow doctrine of equitable tolling.

To justify equitable tolling, Plaintiff relies primarily on her claim that Defendants failed to post wage/hour notices in their private homes, as well as her claim that she had no knowledge of her rights or claims and that Defendants intentionally concealed them from her. Plaintiff, who at all times has the burden of proof to establish her right to equitable tolling, cannot overcome the fact that Defendants have introduced significant evidence that they did post, maintain, and describe the contents of the wage/hour posters to Plaintiff in her native language, as well as undisputable evidence that Defendants otherwise took extensive steps to lawfully treat Plaintiff as an employee under the law.

Plaintiff has also attempted to raise factual disputes as to her knowledge of her legal rights through her affidavit and that of her close friend Raziah "Shaku" Begum. However, Plaintiff cannot establish that she took reasonably diligent steps to discover or preserve her rights and claims, and based upon a close reading of the evidence (in particular, what Plaintiff's and

---

[1] Plaintiff attacks Defendants' motion, in part, on procedural grounds that it was styled as a motion to dismiss and in the alternative, a motion for summary judgment. This argument is inexplicable. As an initial matter, the parties participated in a pre-motion conference before the Court to address this motion. At the conference, it was explicitly discussed – and the Court recognized – that it would be made as a motion to dismiss (Defendants had not yet answered Plaintiff's Amended Complaint, although they had previously answered the original Complaint), but if there turned out to be factual issues, the motion could be converted by the Court into one for partial summary judgment. In any event, Defendants have also moved to dismiss Plaintiff's FLSA overtime claims – based solely on the allegations in the Amended Complaint – which undoubtedly is a proper motion to dismiss.

Shaku's affidavits do <u>not</u> say) the only reasonable inference is that Plaintiff <u>was</u> aware of her rights and the law.[2]

### A. An Alleged (And Disputed) Failure To Post Wage/Hour Notices In A Private Home Is Insufficient To Trigger Equitable Tolling.

Where Defendants have submitted detailed sworn affidavits that they posted and/or maintained in their homes copies of wage/hour notices, and described the contents of the notices to Plaintiff in her native language, Plaintiff's mere denial is insufficient to prove that the court should apply equitable tolling. It is undisputed that Plaintiff cannot read any language; therefore she cannot understand or even recognize such a notice. Plaintiff's burden of proof is of consequence on this motion, and is the reason why equitable tolling is only applied in extraordinary circumstances in the absence of disputes – otherwise every FLSA complaint would dispute that a notice was posted and assert a lack of knowledge to automatically create a "dispute" of fact sufficient to avoid summary judgment and proceed to trial. This is neither equitable nor the law, particularly in the unique context of a domestic employer.

Significantly, Plaintiff cites only two equitable tolling decisions (discussed below) that arise in the live-in domestic service employment context. In fact, Defendants have been unable to find any other published decisions on equitable tolling arising in the domestic service context (i.e., where the employer's "establishment" is their private home). It is hard to believe that there are only two reported instances where an individual employer has failed to post the required

---

[2] The issue of equitable tolling, like all equitable issues, is for disposition by the Court. In the event that the Court finds that Plaintiff has raised sufficient material fact disputes, Defendants respectfully request that the Court hold an evidentiary hearing to resolve the issue of equitable tolling at the outset and prior to extensive discovery and litigation. This is well within the Court's discretion and authority. *See, e.g., Mandarino v. Mandarino*, No. 04-148 (GWG), 2010 U.S. Dist. LEXIS 30896 (S.D.N.Y. Apr. 1, 2010) (following explicit suggestion of Second Circuit and holding evidentiary hearing on issue of equitable tolling); *Smith-Haynie v. District of Columbia*, 155 F.3d 575 (D.C. Cir. 1998) ("equitable tolling and estoppel, which ask whether equity requires extending a limitations period, are for the judge to apply, using her discretion, regardless of the presence of a factual dispute."); *Rivera-Gomez v. Castro*, 900 F.2d 1 (1st Cir. 1990) (approving of district court's evidentiary hearing to address equitable tolling issue); *Watkins v. Milliken & Co.*, 613 F. Supp. 408 (W.D.N.C. 1984) (holding evidentiary hearing on equitable tolling).

wage/hour notice in their private home, or that savvy plaintiffs' attorneys have somehow failed to raise equitable tolling arguments before in the domestic worker context.  Rather, the posting requirement makes no sense in the domestic employment context, and equitable tolling for failure to post, particularly where defendants have introduced countervailing evidence, is inappropriate.

A careful examination of the only two relevant decisions reveals precisely why Plaintiff's equitable tolling claim is without merit.  In *Ramirez v. Rifkin*, 568 F. Supp. 2d 262 (E.D.N.Y. 2008), Defendants did not maintain any payroll records, did not withhold taxes from the plaintiff's wages, did not provide the plaintiff with a W-2, and attempted (improperly) to treat plaintiff as an independent contractor.  Moreover, it was *undisputed* that defendants did not comply with the posting requirements, and made no attempt to comply with them.  Nevertheless, the court merely denied summary judgment, and did *not* rule that the plaintiff was entitled to equitable tolling.  In *United States v. Sabhnani,* 566 F. Supp. 2d 139 (E.D.N.Y. 2008), the only reported decision actually granting equitable tolling to a domestic live-in worker, defendants were criminally prosecuted and sentenced to 13 years imprisonment for forced labor, servitude, and harboring aliens in connection with their abusive and slave-like treatment of the plaintiff.  In determining restitution, the court granted equitable tolling, due in part to the *undisputed* failure of the defendants to post notice or comply with any laws (including, not surprisingly, their violation of criminal laws).  The remainder of the cases cited by Plaintiff arose solely in the commercial business context, and given the extraordinary equitable nature of the remedy Plaintiff is seeking, are inapplicable in the uniquely domestic environment.

The differences between this case and the two relied upon by Plaintiff are striking.  Here Defendants have produced documents and file detailed affidavits affirming that they maintained

3

wage payment records, reported to the state and federal government that they were employing Plaintiff, paid and reported taxes on Plaintiff's behalf, withheld and submitted employment taxes on Plaintiff's wages, provided Plaintiff with a Form W-2 each year, acquired a social security number for Plaintiff, and sponsored Plaintiff for a green card.  (N. Sethi Aff. ¶ 5; S. Sethi Aff. ¶ 6, 7, 9)  Moreover, Defendants have presented evidence – through sworn affidavits – that they maintained the required wage/hour posters in their home and that they made conscious and explicit efforts to explain the posters and the law to Plaintiff in her native language since she cannot read English.  (N. Sethi Aff. ¶ 4-5; S. Sethi Aff. ¶ 6-7)

> **B.** **Plaintiff Had Knowledge Of Her Legal Rights And Claims And Failed To Act With Reasonable Diligence To Preserve Them.**

Even if Plaintiff could prove – which she cannot – that Defendants failed to post, maintain, or explain wage/hour posters and the law to her, and despite Plaintiff's attempt to create disputes of material facts, the only reasonable inference to be drawn from the evidence is that Plaintiff was aware of her legal rights, aware of her potential claims for unpaid wages, and failed to act with reasonable diligence to protect her claims.

First, Plaintiff's assertion that Defendants "concealed" from her the amounts they were paying to her each month must be rejected, because there is documentary evidence that: (i) Defendants regularly wrote checks made out in Plaintiff's name; (ii) bank records show corresponding deposits in Plaintiff's bank account for every check made out to Plaintiff; (iii) Defendants kept pay records which show payments by check, cash, and wire to India; (iv) Defendants made numerous cash payments and wire transfers to Plaintiff's family in India in the precise amounts due as Plaintiff's wage at the time; (v) Defendants paid employment taxes based on payments made to Plaintiff; and (vi) Defendants reported and paid income taxes on Plaintiff's behalf.  (N. Sethi Aff. ¶ 5, 7; S. Sethi Aff. ¶ 6-7, Exs. 1-2; Alloy Decl. ¶ 5)

4

Second, Plaintiff's assertion that she had no knowledge of her legal rights or wage/hour laws does not withstand scrutiny. While Plaintiff takes great pains to deny that she ever discussed her legal rights or wage/hour laws with Defendants, her affidavit is remarkable for the fact that she does not deny that she had independent knowledge of wage/hour laws. In fact, the only reasonable inference to be drawn from the evidence is that she did, in fact, have knowledge of her legal rights and the law. For example:

- Plaintiff concedes that she met with two members of a workers' rights organization in late 1999 or early 2000, but denies that the purpose of the visit was to discuss her legal rights. (Plaintiff Aff. ¶ 11) Plaintiff claims instead that Ms. Sethi called the two workers' rights activists to ask for help in getting Plaintiff a green card, and claims she later overheard Mr. Sethi arguing with his wife and *understood* what they were arguing about. (*Id.*) This makes no sense. The Sethis hired and paid for immigration attorneys to facilitate Plaintiff's green card process and sponsored Plaintiff's application; they would have had no reason to invite two strangers into their home to "help" Plaintiff with this legal process. (N. Sethi Aff. ¶ 5) And most damningly, the Sethis only speak English to each other, so it is not credible that Plaintiff could have understood what they were allegedly arguing about.

- Plaintiff concedes that she "may" have spoken with other nannies who were members of Andolan, but denies that she ever discussed Andolan with them or that she discussed workers' rights issues with Ms. Sethi. (Plaintiff Aff. ¶ 12) Plaintiff does not, of course, deny that she discussed workers' rights and wage/hour issues with other nannies, including nannies who were members of Andolan.

- There is no dispute that Plaintiff was close friends with Raziah "Shaku" Begum and frequently socialized with her. (R. Sethi Aff. ¶ 2-6, 9, Exs. 1-3; S. Sethi Aff. ¶ 8; Plaintiff Aff. ¶ 7, 13; Begum Aff. ¶ 3, 7) There is also no dispute that Shaku was a high-profile member of Andolan, a workers' rights organization (she is pictured on the welcome page of Andolan's website), or that Shaku has filed and participated in two different wage/hour lawsuits, including one filed against the Chellarams (who Plaintiff knew). (Alloy Decl. Exs. 1-3) In her affidavit, Plaintiff specifically denied ever discussing wage/hour laws or her rights with the Sethis. (Plaintiff Aff. ¶ 12) Pointedly, however, she did <u>not</u> deny discussing wage/hour laws or her rights with Shaku. In fact, such discussions are the only reasonable inference to be drawn in light of Plaintiff's close relationship with Shaku, Shaku's involvement with Andolan, and Shaku's participation in two different wage/hour litigations.

- Similarly, although Plaintiff denied in her affidavit that she discussed Shaku's wage/hour lawsuit with Neeraj Sethi, she admittedly discussed the lawsuit with Ronica Sethi. (Plaintiff ¶ 7) Conspicuously absent from both Plaintiff's and Shaku's affidavits is a

5

statement denying that they discussed the lawsuit with each other. In fact, Plaintiff knows that Shaku brought the lawsuit against the Chellarams after they kicked Shaku out of their house, spit on her, and kept her green card. (*Id.*) These are hardly "facts" that Ms. Sethi would have told Plaintiff about her close friends. Rather, the only reasonable inference is that Plaintiff discussed Shaku's lawsuit with Shaku (which Plaintiff surely would have denied in her affidavit if she could). We note that Dr. Sethi has also submitted an affidavit declaring that she, too, discussed Shaku's lawsuit (and settlement) with Plaintiff. (S. Sethi Aff. ¶ 9)

Finally, Plaintiff cannot establish that she acted with reasonable diligence in protecting her claims once she discovered that she had a claim. In her Amended Complaint and in her affidavit, Plaintiff claims that she repeatedly asked the Sethis to pay her money that they allegedly owed her.[3] (Plaintiff Aff. ¶ 14-15) Defendants at all times disputed that they owed Plaintiff any money, and have submitted affidavits that they repeatedly told Plaintiff in response that they did not owe her anything. (N. Sethi Aff. ¶ 7-8) However, to act with reasonable diligence to protect her rights, Plaintiff must do more than simply claim she is owed money; an employer is entitled to disagree with an employee's claim for wages. This is not "deceptive" behavior under the law sufficient to trigger equitable tolling. Rather, the employer's denial or disagreement with an employee over their pay is what puts the employee on notice that they might have a claim. Here, Plaintiff cannot on the one hand claim that she repeatedly told the Sethis she was owed money, and on the other hand claim that she had no idea she was owed money. While the exact amounts that Plaintiff alleges she was owed may not have been known to her, it is undisputed that as of 2008 she "knew" she was owed additional money which she had not been paid (Plaintiff Aff. ¶ 15) By failing to do anything about her claim for at least two years, Plaintiff did not act with any diligence, and is therefore not entitled to equitable tolling as a matter of law.

---

[3] It appears that Plaintiff is now claiming that the money owed to her relates only to her work while living with the Sethis (1998 – 2003), and not for her work while living with Drs. Sethi and Raj. (Plaintiff Aff. ¶ 14-15)

## II. PLAINTIFF'S FLSA OVERTIME CLAIMS FAIL AS A MATTER OF LAW BECAUSE SHE WAS A LIVE-IN DOMESTIC SERVICE EMPLOYEE

Plaintiff contends that the FLSA's overtime exemption for live-in domestic service employees does not apply to her because she allegedly gave an occasional massage to Neeraj Sethi in his home, allegedly as part of her job. Plaintiff makes two arguments in support of her opposition: (i) massage work performed in the house is not "of a household nature;" and (ii) by performing both domestic service work and providing massages in the same workweek, all of Plaintiff's work must be treated as non-exempt and overtime eligible pursuant to a regulation applicable to agricultural workers. (Pl. Opp. Mem. at 18-24) Plaintiff's arguments fail as a matter of law.

### A. Plaintiff's Alleged Massage Work Was "Of A Household Nature."

The FLSA exempts from overtime "any employee who is employed in domestic service in a household and who resides in such household." 29 U.S.C. § 213(b)(21). The Department of Labor has defined "domestic service employment" as "services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed." 29 C.F.R. § 552.3. The regulation further provides an illustrative (but not exhaustive) list of domestic service employees, including "cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use." *Id.*

Plaintiff argues that "[b]ecause massage work is not tied to the home and in fact is typically performed outside the home, it is not work 'of a household nature.'" (Pl. Opp. Mem. at 24) Plaintiff further contends that massage work may not qualify as domestic service work because the regulation does not explicitly mention "masseuses or any persons performing comparable work." *Id.* Plaintiff's arguments fundamentally misinterpret the applicable law.

7

As an initial matter, the live-in domestic service exemption applies to "employees employed in domestic service in a household and who reside in such household." It is without question that Plaintiff was (i) employed as a housekeeper/nanny, (ii) in a private household, and (iii) resided in such household. Indeed, in her Amended Complaint, Plaintiff provides a laundry list of alleged job duties and responsibilities, all of which make clear that she was employed "in domestic service." Thus, the fact that Plaintiff allegedly gave massages, on occasion, to her employer, does not change the fact that she was employed "in domestic service." Put another way, Plaintiff was not employed as a masseuse by Defendants; rather, she was employed as a housekeeper/nanny, and she allegedly gave massages to her employer on occasion. This does not take her outside of the exemption and does not require the Court to conduct an analysis of the meaning of "domestic service employee."

Second, even if Plaintiff had been employed by the Sethis as a masseuse, such work would have been "of a household nature." The fact that massage work is "typically" performed outside the home is irrelevant. Many of the jobs listed in the regulation are typically performed outside of private homes, including cooks, waiters, maids, nurses, janitors, laundresses, and gardeners. The salient consideration is whether the particular work <u>in this instance</u> is (i) being performed in or about the employer's home and (ii) for the benefit of the household – either the persons residing in the home or the home itself. Here, there can be no dispute that any alleged massages provided by Plaintiff were (i) performed <u>in</u> the Sethi's home and (ii) for the benefit of Mr. Sethi, and therefore were of a household nature.[4]

---

[4] Under Plaintiff's flawed theory, even a live-in full-time masseuse would not qualify for the domestic service exemption. This makes no sense. For example, massage work performed in the home for the benefit of the homeowner is no different than the work performed by a nurse, who administers treatments and may provide physical therapy to their patients – including massages. Nurses, of course, are not typically employed in private homes. Nevertheless, where nurses are employed in and live in a private household to care for a person residing in the home, their work is considered domestic service employment. *See* 29 C.F.R. § 552.3. Plaintiff has provided no rational explanation for why a masseuse should be treated any differently simply because that particular job title is

8

### B. Plaintiff's Reliance On A Regulation Applicable To Agricultural Workers Is Misplaced.

Even assuming arguendo that Plaintiff's alleged occasional massages were not "of a household nature," Plaintiff mistakenly relies on a regulation applicable only to agricultural workers to argue that she is entitled to overtime for all of her work in any week where she performs both exempt and non-exempt work. 29 C.F.R. § 780.11 (falling under Part 780 of the FLSA: "Exemptions Applicable to Agriculture, Processing of Agricultural Commodities, and Related Subjects Under the Fair Labor Standards Act"). Obviously, Plaintiff was not employed as an agricultural worker, so this regulation is not applicable to her.

Nevertheless, Plaintiff attempts to circumvent this fatal flaw by citing several court decisions and articles which apply this regulation and/or principle outside of the agricultural context. These decisions and articles each rely – mistakenly – on: (i) decisions arising out of the agricultural context; and/or (ii) decisions which themselves mistakenly relied on decisions arising out of the agricultural context. *See* Defendants' Mem. of Law at 21-22, and cases cited therein. However, two (or three) wrongs do not make a right. The fact that Plaintiff's primary authority misapplied the applicable law should not encourage this Court to do the same.[5]

In any event, the cases cited and relied upon by Plaintiff to apply this "principle" to domestic service workers are readily distinguishable from the facts in this case. In *Astudillo v. U.S. News & World Report*, No. 02 Civ. 7902 (WHP), 2004 U.S. Dist. LEXIS 18685, at *8-9 (S.D.N.Y. Sept. 17, 2004), the Court denied summary judgment on the live-in domestic service

---

not included in the "illustrative" but not "exhaustive" list of typical domestic workers. Indeed, among the many examples of "domestic worker" jobs listed in Wikipedia are housemaid, housekeeper, maid, nanny, nursemaid, and masseur/masseuse. *See* http://en.wikipedia.org/wiki/Domestic_worker  (last visited July 29, 2011).

[5] For example, the Court in *Marshall v. Intraworld Commodities Corp.*, No. 79 C 918 (EHN), 1980 WL 2097 (E.D.N.Y. June 9, 1980) cites *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409 (5th Cir. 1975), for the general proposition that "where both exempt and non-exempt work are performed during the work week the entire work is treated as non-exempt." However, *Skipper* was interpreting the agricultural exemption. Similarly, the scholarly articles that in turn rely on *Marshall* for this "general" proposition are only exacerbating the error.

9

exemption because of: (i) a factual dispute as to plaintiff's actual responsibilities; (ii) plaintiff's position that she only "occasionally" performed domestic work as a "convenience" to her employer; and (iii) plaintiff's argument that her primary job was as a "receptionist" – answering the phone, taking messages, maintaining files, and other clerical work – for her employer in his role as head of several corporate entities. Indeed, the Plaintiff in *Astudillo* was actually placed on a corporate payroll and named that corporation as a defendant on a "joint employer" theory.

By contrast, here there is no dispute that Plaintiff was employed for the principal purpose of performing domestic work and that her alleged non-exempt massage work was only performed "occasionally" (if at all). Most significantly, however, and unlike the clerical work performed in *Astudillo*, Plaintiff was not providing massages to Mr. Sethi in his business capacity as CFO of a public company. Rather, she was allegedly providing them to Mr. Sethi personally, in his own home.

*Marshall v. Intraworld* is similarly distinguishable, as the alleged "non-exempt" work performed by the plaintiff in that case was work for the defendants' companies, *at the employer's corporate offices*. Not surprisingly, the court concluded that the plaintiff's work was not exclusively domestic in nature. 1980 WL 2097, at * 4; *see also Zirintusa v. Whitaker*, No. 05-1738 (EGS), 2007 U.S. Dist. LEXIS 29, at *16 (D.D.C. Jan. 3, 2007) (denying summary judgment based on domestic service exemption where there was a question of whether the plaintiff performed work outside of the defendant's home for an entirely different person).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Partial Motion to Dismiss and/or in the alternative hold an evidentiary hearing to resolve the issue of equitable tolling.

Dated: New York, New York
July 29, 2011

       Respectfully submitted,

       PROSKAUER ROSE LLP

       <u>/s/ Joshua F. Alloy</u>

       Kathleen M. McKenna
       Joshua F. Alloy
       Eleven Times Square
       New York, NY 10036-8299
       Phone: (212) 969-3000
       kmckenna@proskauer.com
       jalloy@proskauer.com
       *Attorneys for Defendants*