```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ANU UPADHYAY,

            Plaintiff,

        v.                              10 Civ. 8462 (NRB)

NEERAJ SETHI, et al.,
                                        Argument
            Defendants.

------------------------------x
                                        New York, N.Y.
                                        January 18, 2012
                                        10:15 a.m.

Before:

      HON. NAOMI REICE BUCHWALD

                                        District Judge


            APPEARANCES



GLADSTEIN REIF & MEGINNISS LLP
      Attorneys for Plaintiffs
BY:   JAMES REIF
      AMELIA TUMINARO


PROSKAUER ROSE LLP
      Attorneys for Defendants
BY:   JOSHUA ALLOY
```

1              (Case called)

2              THE COURT:  Good morning.

3              THE CLERK:  Is the plaintiff present and ready to
4     proceed?

5              MS. TUMINARO:  Gladstein Reif & Meginniss by Amelia K.
6     Tuminaro.

7              MR. ALLOY:  Josh Alloy, Proskauer Rose, for the
8     defendants.

9              MS. TUMINARO:  Your Honor, if I may mention, the
10    plaintiff is here.  We have an interpreter to provide a summary
11    of the arguments, if that is OK with the Court.

12             THE COURT:  Sure.

13             MS. TUMINARO:  There will be a little bit of talking,
14    but they will try and keep it as quiet as possible.

15             THE COURT:  That's fine.

16             I think everyone recognizes that there are essentially
17    two aspects of this motion.  One is the question of whether the
18    performance of massages takes the plaintiff outside the scope
19    of household employee, an issue that I think everyone
20    recognizes is one governed by statute, case law, etc.  I don't
21    think it would be valuable for us to spend any time discussing
22    that.  We have looked at it and have reached our own views
23    about it.

24             With respect to the equitable tolling issue, let's put
25    the merits to one side for a minute and begin by discussing the

1  procedural question. The defendants take the position that if
2  I'm not prepared to grant their motion based on the papers, I
3  should hold a hearing. The plaintiff, I think, takes the
4  position that the Court should not hold a hearing, because
5  there is an overlap between ultimate merit issues and issues
6  that in the plaintiff's view need to be decided in the context
7  of a resolution of the equitable tolling issue.

8        I would appreciate it, Ms. Tuminaro, if you were to
9  explain to me the issues that you think I would need to decide
10  in the context of a hearing on the equitable tolling argument
11  that would overlap the merits. Let's leave it at that.

12        MS. TUMINARO: Yes, your Honor. As a preliminary
13  matter before we address the specific issues that the Court
14  would need to decide, plaintiff is entitled to discovery on the
15  issues surrounding whether the statute of limitations should be
16  tolled here. We haven't had discovery. We have had some
17  informal disclosures, but we haven't had official document
18  requests, we haven't had any interrogatories or depositions.
19  In that respect plaintiff has not been able to fully develop a
20  record.

21        Insofar as the issues need to be decided --

22        THE COURT: Let's hold that for a minute. I'm going
23  to then ask you exactly what is it, given the exchange of
24  affidavits that you both engaged in, which are pretty detailed,
25  you need to have discovery on in terms of the equitable

1  tolling.  Let's hold that.  I don't want to lose that.

2  What exactly are the overlapping issues, things that
3  you say the Court would have to resolve?

4  MS. TUMINARO:  Before I get there as well, we also
5  submit that plaintiff has a right to a jury trial on these
6  issues.

7  THE COURT:  She has a right to a jury trial on the
8  ultimate merit issues.  The reason I'm asking you to answer the
9  question I that I posed is because the law is well established
10 that when there is an issue of the jurisdiction of the court,
11 unless the issue is inseparable from the merits, the court
12 decides the jurisdictional issue.  You know it and I know it,
13 we do not routinely have statute of limitations issues decided
14 by juries.  Courts decide estoppel issues, they decide statute
15 of limitations issues, they decide all sorts of jurisdictional
16 issues.

17 So, the issue is there is a problem if, in order to
18 decide the equitable tolling issue, I absolutely have to go, in
19 a sense, into the merits.  But I'm not sure that I do, so I
20 need you to tell me why you think I do.

21 MS. TUMINARO:  Your Honor, if I may respond.  We
22 disagree that this is for the Court to decide.  The Second
23 Circuit has a number of cases where they have stated that where
24 the statute of limitations operates as an affirmative defense
25 and where there are material issues of fact surrounding the

1  application of the statute of limitations, that factual issues
2  are for resolution by a jury.
3          THE COURT:  You and I are going to have to disagree
4  about that.  There are plenty of other cases which, as I say,
5  make it clear that the broad principle that if the
6  jurisdictional issue overlaps the merits and the court would
7  have to be deciding a merit-based issue on which a party was
8  entitled to a jury on the preliminary issue, then there is a
9  problem.
10          But it may not be the case that there is an overlap of
11 merit and statute of limitations, so I need you to tell me what
12 specific issues you're suggesting I would need to reach that
13 would impinge upon the plaintiff's jury trial.
14          MS. TUMINARO:  To set it aside and move forward, the
15 case I would direct you to in terms of this question about
16 whether or not there is a disputed issue that goes to the jury
17 on the statute of limitations is Katz v. Goodyear Tire, where
18 the Second Circuit addresses this question in the context of
19 being a jurisdictional issue.  It says the statute of
20 limitations, when it operates as an affirmative defense, issues
21 of fact as to the application of that defense must be submitted
22 to the jury.  There is a discussion in there about the
23 distinction between jurisdictional --
24          THE COURT:  Excuse me.  You have the burden of proof.
25 This is not the defendant raising an affirmative defense.  This

1 is your problem.

2          MS. TUMINARO:  In terms of the overlap, there are a
3 number of factual issues that the Court would need to determine
4 as to whether the statute should be tolled.  As an initial
5 matter, as we mentioned in our brief, the employer has an
6 obligation to post a notice advising of employees' rights under
7 the Fair Labor Standards Act and the relevant state statutes.
8 Plaintiff has put forward evidence that they didn't do that
9 here.  That is undisputed.  But the defendants have maintained
10 that they orally translated these notices.  Plaintiff denies
11 this.  That would be one issue.

12          THE COURT:  Why is that a merits issue?

13          MS. TUMINARO:  It goes to whether or not there was a
14 willful violation of the Fair Labor Standards Act.

15          THE COURT:  I honestly think that in light of Mr.
16 Sethi's affidavit in this case, paragraph 3, there is no issue
17 here.  If the Sethis initially did not pay the plaintiff proper
18 wages, it was willful.  He has said, I am familiar with this
19 law.  What is the issue?  What is the willfulness issue?

20          You're not going to have many defendants who say, I am
21 fully familiar with the law, I do it for my job.  Therefore, if
22 he did not comply with the law, it was willful, willful in an
23 intentional, knowing way.  I don't think willfulness is really
24 an issue.

25          MS. TUMINARO:  I don't know what the defendants'

1  position is going to be on that.  They dispute that they didn't
2  pay her these wages.
3              THE COURT:  That's the merits.  I agree with you
4  totally I shouldn't, cannot, and will not find in the context
5  of any hearing or resolution of this equitable tolling issue
6  how much money the defendants paid the plaintiff, nor will I
7  ever make a finding that plaintiff was entitled to X and she
8  was either paid X minus Y or X plus Y.  That's the merits.
9              MS. TUMINARO:  There is a liquidated damages issue
10 that also is present that would go to the merits issue, and
11 plaintiff's entitlement to damages here would be one that the
12 willfulness would bear on as well.
13             THE COURT:  It seems to me that as to willfulness, it
14 would be very hard, indeed I think impossible, for the
15 defendant Mr. Sethi to argue that he was not fully aware of the
16 law.  If he did not comply with it, that is a deliberate,
17 intentional/willful act.  It's not a mistake.  I don't really
18 see how willfulness is an issue here.
19             MS. TUMINARO:  There is factual and legal overlap
20 between some of the facts plaintiff and defendants are
21 disputing here.  Some of those go to whether or not there was
22 any violation at all of these various requirements, as well as
23 to the factual disputes as to when plaintiff became aware of
24 her rights or whether she was aware of her rights.  These would
25 all be issues that the Court would need to decide if the Court

1    were to conduct such an evidentiary hearing.

2            THE COURT:  Right.  But when she became aware of her
3    rights is a statute of limitations issue, not a merits issue.
4    If you're right and there was equitable tolling here, the case
5    becomes just how many years, and it's math.  There is no drama
6    anymore.  It just goes back all the way.  That's what your
7    argument is, that there is no applicable statute of
8    limitations, and then we explore the exact facts, what did she
9    get, was it sufficient to comply with the law, was it
10   insufficient to comply with the law.

11           MS. TUMINARO:  There is also a concealment issue here
12   in terms of the defendants' concealment of the wages paid to
13   the plaintiff by virtue of their control over the bank account.

14           THE COURT:  Why is that not an estoppel issue rather
15   than a merits issue?  The facts as to what she got or didn't
16   get is the merits.  Whether they lied to her or not is an
17   estoppel issue.

18           MS. TUMINARO:  These questions of whether a plaintiff
19   exercised diligence or whether defendants affirmatively
20   concealed information from the plaintiff are factual issues,
21   that the Second Circuit has said --

22           THE COURT:  I'm not saying --

23           MS. TUMINARO:  -- are factual issues that, where they
24   serve to toll the limitations period, must be decided by a
25   jury.

1                THE COURT:  Play with me.  I disagree with you about
2    that.
3                MS. TUMINARO:  OK.
4                THE COURT:  Now we're in my world.  My world says I
5    can decide that.  What I'm trying to ask you is assume I'm
6    right for the purpose of this discussion that I can decide
7    factual issues related to knowledge, concealment, all the
8    elements, whether the defendants in any way prevented the
9    plaintiff from bringing the suit earlier, all the elements of
10   equitable estoppel.
11               Having now in my view essentially put willfulness off
12   the table, are there other factual issues that I would have to
13   decide in the context of equitable estoppel that would fall
14   over into the merits issues in a way that if I decided them in
15   the context of a hearing would impinge on the plaintiff's jury
16   trial?
17               MS. TUMINARO:  I don't believe there are.  That's our
18   essential argument.
19               THE COURT:  Mr. Alloy, what is your take on what I
20   just said?
21               MR. ALLOY:  I agree.  I think there are two essential
22   factual issues to the merits:  How many hours the plaintiff
23   worked, whether she actually worked more than 40 to 44 hours in
24   a week, how much she was paid, and whether that violates the
25   minimum wage or overtime or doesn't.  I don't see any overlap

1   with the equitable tolling issue, whether something was posted
2   or maintained or whether there was concealment.
3           As you point out, the willful violation, if there was
4   a true overlap between willfulness and equitable tolling, we
5   would see equitable tolling a lot more often.  In fact, we see
6   willfulness is pretty much a de facto finding if there is a
7   violation in this circuit.
8           There doesn't tend to be that much factual issues
9   involved in willfulness absent very sort of significant good
10  faith attempts by the defendants to comply with the law, which
11  is very different from the type of fraudulent concealment and
12  other factual disputes.  Frankly, we don't necessarily agree
13  that there are true factual disputes when you look at what is
14  actually plausible.  But I think that is another issue.
15          All that is a way of saying no, I don't see any
16  overlap between the two.
17          MS. TUMINARO:  Are the defendants prepared to
18  stipulate that if there is a violation, the violation was
19  willful?
20          MR. ALLOY:  No.
21          THE COURT:  Remember, logically, unless there is
22  equitable tolling, I don't think that the plaintiff has a
23  timely claim against Dr. Sethi, the husband.
24          MS. TUMINARO:  That's not accurate actually, your
25  Honor.  Under New York law the statute goes back --

1           THE COURT:  I'm only worried about federal law.

2           MR. ALLOY:  I think that's right.  If equitable
3   tolling does not apply, I think there are serious questions
4   about this Court's subject matter jurisdiction.  I also think
5   there are serious questions about any viable claims against two
6   of the defendants.  That would leave the two doctors, Sethi and
7   Raj, who don't live in this state and aren't residents of this
8   state, and they have no state law claims.

9           THE COURT:  Tell me if I'm wrong in my memory of the
10  facts.  This case was filed in November of 2010.  If you go
11  back three years, which is the assumption for willfulness, you
12  would go back to November 2007.  My understanding is that the
13  plaintiff did not work for the doctors within that period of
14  time.  That is my point, that they are really sort of outside
15  this whole willfulness discussion.  The willfulness only has a
16  role if there is equitable tolling, and the role has nothing to
17  do with statute of limitations, it has to do with damages.

18          We put to one side earlier this discovery point that
19  you wanted to raise.  Let's assume for our discussion that I'm
20  going to follow through on the notion of having a hearing just
21  on the equitable tolling issue.  What discovery is it that
22  you're suggesting, Ms. Tuminaro, is necessary, focusing just on
23  the equitable tolling issue?

24          MS. TUMINARO:  Your Honor, plaintiff hasn't had any
25  formal discovery, so we would want to submit interrogatories

1  and document requests and have depositions.  Defendants made
2  various claims in their affidavits about we advised the
3  plaintiff of her rights as to this, we explained these kinds of
4  things.  They are conclusory statements that don't mention with
5  any specificity the date that these oral translations allegedly
6  took place, who was there, what notices were translated.  There
7  is a whole scope of information that we would want to explore
8  based on the affidavits.
9              THE COURT:  I would assume that they would say, in all
10 candor we cannot tell you the exact date.  If they would tell
11 you a date, I would probably not believe them.  How would
12 hashing all of this out through depositions be more useful than
13 having a hearing at which you cross-examine everybody based on
14 these affidavits?
15             MS. TUMINARO:  It would be useful in the sense that
16 having discovery prior to cross-examination is always useful
17 because you can then get at what the facts are, you can ask
18 your own questions, you can explore certain things that weren't
19 mentioned in the affidavits.  It's for all the reasons that
20 Rule 26 provides discovery to plaintiffs.
21             THE COURT:  Since one of the concerns here is
22 following rule one that we should be concerned about, cost and
23 efficiency, how do we serve those functions?  Is there a way to
24 control discovery to be limited to the specific issues, or in
25 reality would we wind up with full-fledged discovery on

1  everything because it would be maybe even more inefficient to
2  try to divide it?
3          MS. TUMINARO:  If it were to be confined at this point
4  to issues around equitable tolling, say hypothetically the
5  Court eventually agrees with us that the statute should be
6  tolled, then you have a second wave of discovery, which is
7  necessarily going to have some overlap.  It would seem that
8  that would be duplicative and inefficient.
9          THE COURT:  If I agreed with you, then it all becomes
10 math, right?  Isn't it just math at the end?
11         MS. TUMINARO:  I think there are going to be
12 significant factual disputes given that some of the records are
13 unavailable based on how far it goes back.
14         THE COURT:  I don't mean undisputed math.  I just mean
15 it's numbers.  It may be more complicated in figuring out.
16         MS. TUMINARO:  There are going to be disputes about
17 how often she did certain kinds of work.  There are going to be
18 disputes about how many hours she worked and during what
19 periods of time.  It's not just math.
20         MR. ALLOY:  If I may, your Honor?
21         THE COURT:  Yes.
22         MR. ALLOY:  Here is my big concern with a allowing
23 plaintiffs sort of unfettered or even focused discovery.  The
24 FLSA, as plaintiff's counsel is well aware, allows for
25 attorney's fees for a successful plaintiff.  So all of the

1   costs associated with this are basically going to be borne by
2   defendant.
3        If plaintiffs are successful, they will recoup all of
4   their costs.  If they are unsuccessful, we have now gone
5   through an entire what we view as a superfluous discovery
6   process at no cost to plaintiffs, at great cost to defendants,
7   even though I think some courts have begun to allow costs and
8   attorney's fees to prevailing defendants, particularly in the
9   Eleventh Circuit.
10       I would suggest if plaintiffs are going to insist on
11  some sort of discovery, which I don't quite understand what is
12  needed beyond cross-examination at a hearing given the
13  affidavits, if plaintiffs are willing to bear defendants' full
14  attorney's fees and costs if they are unsuccessful, we would
15  consider some sort of limited discovery.  Beyond that, I view
16  it as completely inequitable and unnecessary endeavor.
17       We have spent over a year now trying to resolve this
18  informally specifically to avoid some of the costs and burdens
19  of discovery.  If they are going to want to depose two doctors
20  who worked in Texas and the other two defendants are in New
21  Jersey, these are enormous costs and burdens to them on an
22  issue that we ultimately feel very strongly has no merit.
23       We would ask for some protection if we are correct
24  that equitable tolling doesn't apply and essentially plaintiff
25  has no claims other than state law minimum wage and overtime

1  claims against two out-of-state defendants.

2  　　　　I can certainly forward the recent decisions from the
3  Eleventh Circuit that have awarded attorney's fees to a
4  prevailing defendant.  I think this is a case where equity is a
5  major issue.

6  　　　　MS. TUMINARO:  Your Honor, I just don't understand
7  here why the courthouse door seems to be closed to plaintiff
8  and she can't be treated like every other plaintiff who is
9  allowed to go through the discovery process.  Normally, if you
10 file an action, you go through your disclosures and then you
11 proceed through discovery.  That has effectively been
12 foreclosed for plaintiff in this case.

13 　　　　The Court has put her through this informal discovery
14 process, which we have done.  But here it is, the case is more
15 than a year old and nothing has really happened.  Plaintiff
16 hasn't been able to take depositions.  Instead, we have had to
17 rely entirely on Defendants' own self-serving affidavits that
18 they draft presumably with their counsel, and they put in the
19 little tidbits of fact --

20 　　　　THE COURT:  I wouldn't make that argument.  After all,
21 who wrote your client's affidavit?  You did.

22 　　　　MS. TUMINARO:  The point is that plaintiff hasn't been
23 allowed to have discovery here.  It seems inequitable here,
24 where someone actually manages to get an attorney to file an
25 action, to try and seek back wages, that the Court is

foreclosing the normal Federal Rules of Civil Procedure to her case.

THE COURT: I find that really offensive.

MS. TUMINARO: Your Honor, I didn't mean to offend you.

THE COURT: You have. An effort by a court to help people resolve a case without spending a great deal of money is considered laudable, not a deprivation of their rights. I'm sorry that that's the way you view it, but that was not the intent.

I thought the complaint of counsel is generally how expensive litigation is, but I guess you don't care if you prevail and the defendant will pay for your bills. I appreciate that. That's a little bit of a problem, because there is actually no remedy for defendant in this case. If this is a baseless case, what are they going to do? Get fees from someone who engages in household help? What type of money does she have? And if it doesn't rise to the level of Rule 11, where they can actually get the fees from counsel? Fee shifting is a good thing, but it's a problem, too. It cuts in two different ways.

I appreciate that it's written into the laws to provide protections for people that might not otherwise be in a good position to protect themselves. That's good if their cases are ultimately meritorious. But it can be an issue if

1   their cases are not so meritorious.

2   I think, Mr. Alloy, the problem is that there are
3   direct contradictions in these affidavits.  There really is no
4   way, no mechanism, for any court to resolve contradictory
5   affidavits just by saying I believe one side and I don't
6   believe the other.  It is, of course, not the case that a court
7   can ultimately, in the context of summary judgment or
8   otherwise, make a decision that says no reasonable jury could
9   believe one side or the other.  But I think you need more of a
10  record than contradictory affidavits.

11  Before I tell you what my intentions are, is there
12  anything else either of you would like to say at this point?

13  MR. ALLOY:  No.

14  THE COURT:  What I'm going to do is I'm going to give
15  you a decision in writing.  We will address the issue of
16  household employee status.  We will address the question of how
17  we proceed from here, the issue of whether it is appropriate to
18  resolve this at a hearing, and if so, what discovery is
19  appropriate, if any, before that hearing.  We should probably
20  have something to you within a few weeks.

21  MS. TUMINARO:  Thank you, your Honor.

22  MR. ALLOY:  Thank you, your Honor.

23  THE COURT:  Thank you.

24  (Adjourned)

25